MURPHY, Circuit Judge,
dissenting.
Because I believe that the establishment by the public school district of this special school in Vesta for children of the Brethren goes beyond what is permitted by the first amendment to the United States Constitution, I respectfully dissent.
The district entered into a contractual arrangement with the religious group known as the Brethren to operate a special public school in Vesta tailored to meet the group’s religious concerns. Before 1984 the district operated two elementary schools: one in Wabasso and one fourteen miles away in Vesta. After the school in Vesta was closed for economic reasons, children of the Brethren either attended the regular public elementary school in Wabasso or were homes-chooled. Various accommodations were made at Wabasso to respect the religious beliefs of the Brethren, such as providing separate tables for them children at lunch and excusing them from activities that involved technological devices. Their opposition to the use of technology includes any use of television, radio, audio and video recordings, computers, or movies.
During 1992-93, the Brethren proposed a joint venture with the school district to reopen the elementary school in Vesta and this proposal was approved at a meeting of the school board in February 1993. The minutes of the meeting and contemporaneous newspaper accounts indicate that the school was identified with the Brethren. One such news story stated in part:
The Wabasso Board of Education has reached an agreement with the Vesta Brethren to proceed with plans for a K-6 elementary school at Vesta this fall.
If it is legally possible to establish this school, it would be operated without the assistance of modern technology such as computers, and video and audio equipment. The reasoning behind this is that the Brethren’s religious beliefs prohibit them from using such items, and this has created a conflict in trying to send their children to the public school in Wabasso, which uses such teaching tools and methods.
To eliminate the need to remove these children from the public school environment and teach them at home, the Brethren made the proposal for a second school in Vesta last year.
Vicki L. Gerdes, “Agreement is Reached on Proposed School in Vesta,” Redwood Gazette, June 17, 1993.
On October 12, 1993, the Brethren, the school district, and Lloyd Paskewitz entered into a formal written agreement to operate a public elementary school in Vesta.[8] Paskewitz had previously purchased the Vesta school building, and the building was made available under the agreement for the district to use free of charge. Paskewitz and the Brethren also agreed to be responsible for all maintenance, security, taxes, and insurance. In return the district would provide a teacher and educational materials and limit the use of technology. Section 6 of the Agreement provides:
The School District shall, to the extent permitted under applicable law and rules and regulations adopted by the School Board of the School District, limit the use of technology such as television, radio, audio and/or video recordings, computers and movies in the classrooms at the school provided for herein.
Sections 8 and 9 indicate that the district envisioned a different set of academic offerings at the Vesta school than at the public school in Wabasso. These sections reserve to the district the right to provide special education, health, music, physical education classes, and hot lunches at the Wabasso elementary school for any students at Vesta who might want to participate in these normally available programs which would not be *1079 offered at Vesta because of the preferences of the Brethren.
The Brethren were actively involved in other ways in the reopening of the Vesta school. Lloyd Paskewitz and several other members of the Brethren participated in the interviews conducted to select a teacher for the new school. It is undisputed that it was unprecedented to have non-district employees present at such interviews. On June 1, 1993, Lloyd Paskewitz provided Superintendent Bates with a list of 19 children who planned to attend the school in Vesta, and only these children eventually enrolled in the school.
There are significant differences between the curricula offered at Vesta and Wabasso. Although the official curricula adopted for the Vesta school calls for at least one half hour of computer lab each week and district officials claim computer technology is available at Vesta, computer training has never been offered. Other forms of technology to which the Brethren object, such as television, video players, and films, have not been used at Vesta, although they are regularly used at Wabasso. The health offerings at Vesta are also not the same as those offered at Wabas-so. The drug awareness education programs used in the Wabasso school for kindergarten through sixth grade are not available at Vesta. Although the official curricula at Vesta requires one half hour of physical education each day “with specialists,” it is presented in an unstructured manner by a parent volunteer who has no formal training in physical education. At Wabasso it is taught in a structured manner by a physical education teacher. The Vesta curricula officially requires at least an hour of musical instruction each week, but the record does not indicate that music is actually offered. If a child at the Vesta school wants such standard curricula offerings, he or she must make a special request and then commute thirty miles in the middle of the school day to Wabasso for health, physical education, or music classes.
The facts of this case show an abandonment of the principle of state neutrality in religious matters which underlies establishment clause jurisprudence. See Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet, 512 U.S. 687, 694, 114 S.Ct. 2481, 2487, 129 L.Ed.2d 546 (1994). The first amendment prohibits the state from favoring one religion over another or from favoring religious adherents collectively over non-adherents. Id. (citing Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968)). Religious neutrality is particularly important in the context of elementary and secondary schools, where the students are impressionable and attendance is involuntary. Edwards v. Aguillard, 482 U.S. 578, 583-84, 107 S.Ct. 2573, 2577-78, 96 L.Ed.2d 510 (1987). While the Supreme Court “has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause,” Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos, 483 U.S. 327, 334, 107 S.Ct. 2862, 2867, 97 L.Ed.2d 273 (1987) (citations and quotations omitted), “accommodation is not a principle without limits,” and at some point accommodation may devolve into an unlawful fostering of religion. Kiryas Joel, 512 U.S. at 704, 114 S.Ct. at 2492; Amos, 483 U.S. at 334, 107 S.Ct. at 2867. An asserted motivation of religious accommodation, even if justified by reference to a state statute, cannot shield governmental actions that otherwise violate the principle of neutrality embedded in the establishment clause. See Kiryas Joel, 512 U.S. at 705, 114 S.Ct. at 2493.[9]
Here the school district has done far more than grant individual exemptions to aspects of the public school curricula under state law, for it has entered into a contractual relationship with members of a religious group to tailor a school to their preferences. The district has agreed to limit the use of technology not for pedagogical reasons, but to match the tenets of a single religious group. It also modified the health, music, physical education, and computer curricula normally offered. The district has acted to create a school where a student interested in partici *1080 pating in the standard health, physical education, music, or computer offerings must make a special request and/or commute almost thirty miles during the school day to obtain such regular educational services at Wabasso. It is not surprising that non-Brethren children have not enrolled at Vesta.
This case is similar to Kiryas Joel where the Supreme Court found that the creation of a school district based on the religious affiliation of the community members was unconstitutional because it impermissibly singled out a particular religious group for special treatment. 512 U.S. at 702, 114 S.Ct. at 2491. The village of Kiryas Joel had been established as an enclave for a particular sect of Hasidic Jews called the Satmars who, like the Brethren, eschewed much of the modern world and maintained a very isolated community. The Satmar children were normally educated in private religious schools in the village, but these parochial schools did not provide services for handicapped students as required by state law. The New York legislature created a special school district that conformed to the boundaries of the village so that services for handicapped children could be provided in a way acceptable to the Sat-mars. Since the community of Kiryas Joel did not receive its benefit “simply as one of many communities eligible for equal treatment under a general law,” there was no guarantee that the next religious community desiring its own school district would be given one and the arrangement was unconstitutional. Id.
Like the legislature in Kiryas Joel, the school district has singled out a particular religious group for benefits by setting up a school the Brethren find acceptable in order to retain their participation in the public school system. There is no guarantee that the next religious group in the district (or elsewhere in the state) could obtain a special school for its members supported with a publicly funded teacher teaching a modified curricula in accordance with their religious beliefs. The establishment of the school in Vesta thus violates the principle of neutrality and “crosses the line from permissible accommodation to impermissible establishment.” Id.
The district argues it reopened the Vesta school to provide a better public education by transporting fewer students from Vesta to Wabasso, reducing the class size in Wabasso, and by lessening a space shortage there as well, but these purposes could have been carried out by reopening the Vesta school as it had operated before without a special signed agreement with the Brethren. The only reason the Brethren are involved is that the district presumably could not afford to reopen the Vesta school without the financial assistance they provided directly in the agreement and indirectly by enrolling their children in the public school system. Even if the district was motivated by improving the overall quality of education in its area, it established a school in which the curricula conformed to the religious objections of the Brethren in exchange for financial assistance. This is not an acceptable secular purpose. See Epperson, 393 U.S. at 106, 89 S.Ct. at 271 (“There is and can be no doubt that the First Amendment does not permit the State to require that teaching and learning must be tailored to the principles or prohibitions of any religious sect or dogma.”); Edwards, 482 U.S. at 593, 107 S.Ct. at 2582 (striking down Louisiana’s Creationism act because the “purpose of the ... Act was to restructure the science curriculum to conform with a particular religious viewpoint”); Pratt v. Independent Sch. Dist. No. 831, 670 F.2d 771 (8th Cir.1982) (removing a film from a school curriculum based on religious objections violated the Establishment Clause).
An impermissible effect of governmental action is one that endorses or promotes religion. County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 592-601, 109 S.Ct. 3086, 3100-05, 106 L.Ed.2d 472 (1989); Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 17, 109 S.Ct. 890, 900, 103 L.Ed.2d 1 (1989). Whether the primary effect is the impermissible endorsement of religion can be measured by what reasonable observers, including non-adherents, would conclude. Allegheny, 492 U.S. at 595, 627-32, 109 S.Ct. at 3101, 3119-21 (plurality opinion). As the district court pointed out, the way in which the school was reopened and operated created a perception in the community that the school was really just for the children of the Brethren even though it was theoretically open to all students. The effect of establishing the *1081 school was thus an endorsement of the Brethren’s beliefs.
The majority relies on Clayton by Clayton v. Place, 884 F.2d 376 (8th Cir.1989), for the idea that state action which coincidentally mirrors certain religious beliefs does not have the effect of promoting religion. Clayton upheld a rule prohibiting dances at public schools where there was no evidence in the record to indicate why the rule had been passed. Id. at 378, 380. In contrast, the actions of the district regarding the school in Vesta did not simply coincide with the beliefs of the Brethren. The record reflects direct involvement of the Brethren in organizing and financing the school. Mr. Paskewitz’s letter, the meetings of the school board, and the formal written agreement between the district and the Brethren, all indicate that but for the religious concerns and financial support of the Brethren, the school in Vesta would never have been reopened or operated in the current manner. Here there is far more than mere coincidence between the modifications of the Vesta school program and the beliefs of the Brethren.
The district contends the Vesta school does not advance religion because it is open to all students and the same curricula available at Wabasso is available to Vesta students willing to bus to Wabasso for specific classes, but it is appropriate to look beyond the theory to examine the practical reality of the situation. See Kiryas Joel, 512 U.S. at 696-97, 114 S.Ct. at 2488-89 (looking at effect of statute, not its form); Lee v. Weisman, 505 U.S. 577, 593, 595, 112 S.Ct. 2649, 2658, 2659, 120 L.Ed.2d 467 (1992) (“subtle and indirect” pressure to participate in religious ceremony can be as réal as overt compulsion; “law reaches past formalism”); Edwards, 482 U.S. at 586-87, 107 S.Ct. at 2578-79 (“While the Court is normally deferential to a State’s articulation of a secular purpose, it is required that the statement of such purpose be sincere and not a sham.”). The contemporaneous newspaper accounts indicate the Vesta school is considered by both Brethren and non-Brethren citizens to be a school for'the Brethren children. The Vesta school creates the perception that the state has singled out the Brethren for special, preferential treatment by modifying the standard curricula to fit their religious objections. Such treatment has the primary effect of creating a state endorsement of the religious views of the Brethren, Edwards, 482 U.S. at 593, 107 S.Ct. at 2582 (“preference” for particular religious beliefs constitutes an endorsement of religion), and cannot be reconciled with the establishment clause cases which require the government to adopt a neutral position toward religion. See, e.g., Kiryas Joel, 512 U.S. at 694, 114 S.Ct. at 2487; Wallace v. Jaffree, 472 U.S. 38, 52-54, 105 S.Ct. 2479, 2487-88, 86 L.Ed.2d 29; Epperson, 393 U.S. at 104, 89 S.Ct. at 270.
Three primary criteria are helpful in considering whether state action has the effect of advancing religion: whether it results in government indoctrination of religious beliefs, whether it defines the aid recipients by reference to religion, and whether it creates an excessive entanglement between the state and religion. Agostini v. Felton, — U.S. —, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Applying these factors to the facts of this case, the actions of the district have the impermissible effect of advancing religion.
Aid that furthers the educational function of religious schools is no longer presumed to be invalid per se, Agostini, — U.S. at —, 117 S.Ct. at 2011, but state action may im-permissibly indoctrinate religious beliefs when it provides direct aid to religious institutions or when it reheves sectarian institutions of costs they otherwise would bear. Id. at —, 117 S.Ct. at 2013; see also Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1, 12, 113 S.Ct. 2462, 2468, 125 L.Ed.2d 1 (1993). Although the Vesta school is theoretically open to the public, the district’s actions are suspect because they reheve the Brethren of costs they would have otherwise borne in homesehooling or establishing their own school. If this arrangement were upheld, it would no longer be necessary for Cathohc, Lutheran, Jewish, or Muslim communities to expend the resources required to establish separate parochial schools. They could also offer a district free rent in a building they own in exchange for a teacher and teaching materials and obtain a religiously homogeneous school with basic educational instruction to their liking. This is the type of direct subsidization that has the effect of advancing *1082 religion. Agostini, — U.S. at —, 117 S.Ct. at 2013; Meek v. Pittenger, 421 U.S. 349, 365-66, 95 S.Ct. 1753, 1763-64, 44 L.Ed.2d 217 (1975) (lending instructional materials and equipment to sectarian schools has the effect of advancing religion).
Aid provided to all eligible children on the basis of neutral, secular criteria regardless of where they attend school is permissible because it does not define recipients on the basis of religion and does not provide incentives for recipients to modify there religious beliefs. Agostini, — U.S. at — - —, 117 S.Ct. at 2013-14; see also Widmar v. Vincent, 454 U.S. 263, 274, 102 S.Ct. 269, 276, 70 L.Ed.2d 440 (1981). In contrast, the effect of the Vesta operation is to provide a benefit for the Brethren which it does not provide for non-Brethren. The Brethren children can now obtain a publicly financed education in Vesta that conforms with their particular religious beliefs, while non-Brethren children, either with or without the reopened Vesta school, must still commute to Wabasso if they want to receive all of the curricula regularly offered by the district. The actions of the district violate the establishment clause because they have the effect of singling out the Brethren for a special benefit.
State aid or action will also advance religion if it leads to an excessive entanglement between church and state.[10] The test for an impermissible entanglement examines the character and purposes of the institutions benefitted, the nature of the aid provided, and the resulting relationship between the government and the religious authority. Agostini, — U.S. at —, 117 S.Ct. at 2014 (quoting Lemon v. Kurtzman, 403 U.S. 602, 615, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971)). Here, the district has entered into a contractual relationship with a religious group for mutual benefit, essentially forming a partnership between the Brethren and the district to open and operate the Vesta school with a curricula acceptable to the religious group.
There are many competing values in our richly diverse society, and the religion clauses of the first amendment protect the rights of all to practice the religion of their choice and also prevent the government from preferential advancement of any one religious group. Because the school district’s establishment of the special school at Vesta crosses over the line permitted under the Constitution, I dissent.

. The majority finds "little significance” in the fact that the Brethren were party to the lease, but the group’s inclusion is significant in light of the district's claim that it did not take into account the religious background or beliefs of those who requested exemptions from the standard curricula.

. The district’s decision to reopen the school by entering into a special written agreement with a religious group could not have been motivated by statutory duties because the district approved the proposal from the Brethren to reopen the school in February 1993 and Minn.Stat. § 126.699 (1996) was not passed until May 1993.

. Agostini states that previous cases have essentially collapsed the "effect” and "entanglement” prongs of the Lemon test. Id. at -, 117 S.Ct. at 2014.